UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PHILADELPHIA INDEMNITY : | |
| INSURANCE CO. : | |
| a/s/o HARTFORD GUN CLUB, INC.; : | |
| and : | |
| HARTFORD GUN CLUB, INC., : | CASE NO. 3:13-cv-00987-VLB |
| Plaintiffs, : | |
| : | |
| v. : | |
| : | |
| UNITED STATES OF AMERICA : | SEPTEMBER 30, 2014 |
| Defendants, : | |

**MEMORANDUM OF DECISION DENYING THE GOVERNMENT'S MOTION TO DISMISS [DKT. NO. 17] AND ORDERING CONSOLIDATION OF THIS CASE WITH *KENNEDY v. UNITED STATES*, 3:14-CV-00719**

**I. PROCEDURAL BACKGROUND**

This is an action brought pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671, *et. seq.*, principally for indemnification against liability for damages resulting from injuries sustained by a third-party during a shooting competition involving members of the United States Coast Guard (the "USCG" or "Coast Guard"). The Government has filed a Motion to Dismiss on two bases. The motion argues that the court lacks subject matter jurisdiction because the indemnification claim is not ripe for adjudication, and that the Government has not waived sovereign immunity. The Government abandoned the sovereign immunity argument in their Reply brief, leaving two issues before the court. The first is whether Plaintiffs' indemnification claim is premature; and the second is whether

1

the Plaintiffs have sufficiently alleged a claim for equitable subrogation. For the reasons stated below, the Motion to Dismiss is DENIED.

This case is the second of three actions to come before this court arising out of an incident that occurred on premises owned by Hartford Gun Club, Inc. ("HGC") on October 24, 2010.  In the first case, *Kennedy v. Hartford Gun Club, Inc., et al*, No. 3:12-cv-1491, plaintiff Patricia Kennedy alleged that she was struck in the head during a shooting competition held at the Hartford Gun Club.  Kennedy first filed the action against HGC and Jason D. Paul[1] on March 14, 2012, in the Connecticut Superior Court for the Judicial District of Stamford/Norwalk. Defendant HGC then filed an apportionment complaint in the Connecticut Superior Court against several members of the Connecticut Sport Shooters (the "CSS") and three members of the Coast Guard. The action was removed to this court by the United States on October 18, 2012. On December 17, 2012, HGC filed a motion for leave to file cross-claims against the CSS defendants and the USCG defendants, which motion was granted by this court on January 10, 2013. On February 27, 2013, plaintiff Kennedy filed a motion to remand to state court, which motion was granted on September 30, 2013. As described in more detail in the remand order, the case was remanded because the state court did not have jurisdiction over the federal defendants, and pursuant to the doctrine of derivative jurisdiction, the case was not removable and thus this Court lacked jurisdiction over the case

---

[1] Kennedy's complaint alleged that Jason D. Paul fired the shot that caused her injuries.

when it was removed.  *See* Memorandum of Decision Granting Plaintiff's Motion to Remand, *Kennedy v. Hartford Gun Club, Inc., et al.*, No. 3:12-cv-1491 (D. Conn. Sept. 30, 2013), ECF No. 103.

The case was remanded to Connecticut Superior Court, and the apportionment claims against the USCG defendants, as well as all cross or counterclaims filed against any party in this court were all dismissed without prejudice.

On October 22, 2012, while the first case was pending before this court, HGC submitted an administrative claim to the USCG, which listed Philadelphia Indemnity Insurance Co.  ("PIIC") as HGC's insurer and subrogee.  The USCG denied that claim on January 14, 2013, and this action alleging a claim arising under the Federal Tort Claims Act (the "FTCA") was filed by PIIC on July 12, 2013.

A third action arising from the October 24, 2010 shooting was filed in this court on May 19, 2014.  In that action, Patricia Kennedy asserts a negligence claim against the United States under the FTCA.  *See Kennedy v. United States*, No. 3:14-cv-719, ECF no. 1.

I. <u>FACTS</u>

The following facts come from the Complaint in this action, unless otherwise noted.  Patricia Kennedy alleges that she sustained injuries as a result of HGC's negligent operated of a gun competition on October 24, 2010.  She further alleges that Chad Barber, Everett Nair, and Barton Nanney (collectively, the "Coast Guard defendants") were responsible for

the design, setup, and oversight of the HGC gun competition on that date, and provided range safety officers for the competition. [Compl. ¶ 12]. On October 18, 2012, John B. Hughes, Assistant United States Attorney and Civil Chief of the United States Attorney's Office, District of Connecticut, certified that the Coast Guard defendants were "acting within the scope of their federal employment as employees of the United States Coast Guard at the time of the incident out of which those claims arose." [Compl. ¶ 13.]

HGC and PIIC, HGC's insurer, allege that one or more of the Coast Guard defendants were actively negligent and that their negligence, rather than the negligence with which HGC is charged, was the direct and immediate cause of the injuries and damages allegedly sustained by Patricia Kennedy. [Compl. ¶¶ 15-16.] Plaintiffs further assert the negligence of the Coast Guard defendants is the primary cause of Kennedy's legal action against HGC, and that HGC and PIIC are currently incurring, and will continue to incur, damages and monetary losses from that action. [Compl. ¶¶ 15, 20-22.] HGC "may be held liable" to Kennedy for damages in that legal action. [Compl. ¶ 22.]

Plaintiffs allege that the Coast Guard defendants were in possession and control of the organization, design, setup, operation, and oversight of the shooting competition and ranges, and that HGC did not know of and had no reason to anticipate the negligence of the Coast Guard defendants and could reasonably rely on them to not be negligent. [Compl. ¶¶ 17-18.] The Complaint contains a copious list of 54 ways in which the Coast Guard

defendants are alleged to have been actively negligent, including among other things: failure to properly manage and supervise the shooting competition and/or the shooting competition design; failure to monitor and confirm that the range and/or shooter were safe; failure to operate the range in a reasonably safe manner; permitting Jason Paul to fire his pistol during the shooting competition when it was unsafe to do so. [Compl. ¶ 19.]

PIIC provided a commercial insurance policy to HGC under policy number PHPK560862 with a policy period from May 4, 2010 until May 4, 2011. [Compl. ¶ 23]. PIIC is providing a defense and indemnification to HGC under the applicable insurance policy. PIIC is asserting its subrogation rights under the insurance contract issued to HGC. [Compl. ¶ 24.]

## II. STANDARD OF REVIEW

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Sarmiento v. U.S.*, 678 F.3d 147, 152 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusion' or 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations and internal quotations omitted). "Where a

complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that he defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

In general, the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) (citation omitted). The Court may

also consider "matters of which judicial notice may be taken or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005) (quoting *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).

III. ANALYSIS

A. Ripeness

The Government argues that under Connecticut law, Plaintiffs may not maintain a stand-alone action for indemnification before a judgment has entered against the Plaintiffs or some other recovery has been made from the Plaintiffs in the underlying action. Because there has not yet been a recovery in the underlying action against HGC, the Government argues that this action is premature and not ripe for adjudication. [Def.'s Mot. to Dismiss at 4-5]. The Plaintiffs argue that they have alleged in their complaint that they have already incurred costs in defending the underlying action, and that under Connecticut law such allegations are sufficient to allow a common law indemnification action to proceed.

This case is in an unusual posture. Under both Connecticut state law, and the Federal Rules of Civil Procedure, HGC may implead third-party defendants to assert indemnification claims, and thus resolve both the underlying action and the indemnification claims together. *See* Fed. R. Civ. P. 14(a); Conn Gen. Stat. § 52-102a(a). However, because the underlying case is pending in state court and may not be removed to federal court,

and because the doctrine of sovereign immunity bars HGC from impleading the Government in a state court action, HGC is unable to resolve its third-party indemnification claim in the underlying action.

Claims for common law indemnity brought under the FTCA are governed by state law. *See Plantronics, Inc. v. United States*, No. 88 Civ. 1892, 1990 U.S. Dist. LEXIS 54, at *2 (S.D.N.Y. Jan. 8, 1990) (citing *United States Lines, Inc. v. United States*, 470 F.2d 487, 490 (5th Cir. 1972)). The Court agrees with the Government that under Connecticut law, stand-alone claims for indemnification are generally premature when there has not yet been a recovery in the underlying case. *See, e.g., McEvoy v. Waterbury*, 104 A. 164, 165 (Conn. 1918) (finding that no cause of action against third-party utility company would accrue until a final judgment were entered against the defendant municipality); *Wilkins v. Fox*, No. CV95 547145, 1995 Conn. Super. LEXIS 1852, at *2 (Conn. Super. Ct. June 21, 1995) ("In Connecticut under common law indemnification does not accrue until a final judgment is rendered in the primary action.") (citing *McEvoy*, 104 A. at 165). However, the exception to this rule is that Connecticut law allows defendants to implead third-parties for the purpose of bringing indemnification claims in the underlying lawsuit, even before any recovery has been made against the defendant. *See* Conn Gen. Stat. § 52-102a(a) (allowing defendants to implead third parties); *see also* Connecticut Practice Book § 10-11 (setting rules for impleading of a third party by a defendant in a civil action); *Simkins Indus., Inc. v. Marsh USA, Inc.*, No.

X01CV010166142, 2001 Conn. Super. LEXIS 2202, at *7 (Conn. Super. Ct. Aug. 7, 2001) (noting that Conn. Gen. Stat. § 52-102a allows a defendant to implead a third party on an indemnification claim even before anything has been recovered from the defendant). This exception recognizes the potential efficiency and cost savings that may be achieved by resolving the underlying claims and the indemnification claims all in one action. *See, e.g.*, *Beaudoin v. Town Oil Co.*, 542 A.2d 1124, 1131 (Conn. 1998) (noting that the goal of the impleader statute, § 52-102a, is the "efficient administration of justice").

The Court finds persuasive the precedent supplied by *Raybestos-Manhattan, Inc. v. United States of America*, in which a plaintiff was permitted to maintain a freestanding indemnification action against the Government seeking indemnification for damages sought in a pending state court lawsuit. No. H-78-416, 1979 U.S. Dist. LEXIS 14402 (D. Conn. Feb. 15, 1979). In *Raybestos*, plaintiff was named as a defendant in a state court personal injury suit. The parties in the state court action did not satisfy the requirements for diversity jurisdiction in federal court. Although the opinion does not state explicitly, it appears there was no federal question in the underlying state court action, and thus, combined with the lack of diversity jurisdiction, there were no grounds for federal jurisdiction. Because the federal district courts had exclusive jurisdiction over plaintiff's indemnification claim against the government pursuant to 28 U.S.C. § 1346(b), plaintiff could not implead the Government in the state

court case. The *Raybestos* plaintiffs sought to have their action against the Government treated as a third-party action for indemnification, in order to avoid the FTCA's exhaustion requirement, 28 U.S.C. § 2675(a). The *Raybestos* court noted that the plaintiff had other third party complaints pending against the Government arising from similar facts, in cases that were pending in federal district court on diversity jurisdiction. 1979 U.S. Dist. LEXIS 14402, at *11-12. The *Raybestos* court found that permitting the freestanding indemnification action to proceed in federal district court would serve the interest of efficiency, by allowing for simultaneous preparation of evidence and possibly a consolidated trial, and ruled that the case should be treated as a third-party claim and exempt from the FTCA exhaustion requirement. 1979 U.S. Dist. LEXIS 14402, at *11-14.

This case became analogous to *Raybestos* when Patricia Kennedy filed her FTCA action against the Government in this court. The factual issues, discovery, and evidence offered in both of these actions are likely to be very similar, if not identical. It will conserve court resources and serve the ends of efficiency to allow this action to proceed in this court along with *Kennedy v. United States*. The Court will thus deny the Government's motion to dismiss, and consolidate the instant case with *Kennedy v. United States*, No. 3:14-cv-719, pursuant to Federal Rule of Civil Procedure 42. The Court may later choose to conduct separate trials in this action, if that would be necessary or appropriate.

**B. Equitable Subrogation**

In response to the Government's motion to dismiss, Plaintiffs argue that their Complaint includes a claim for equitable subrogation, in addition to the common law indemnification claim discussed above.  Plaintiffs argue that the Complaint "clearly invokes the Court's equitable powers." [Pl. Opp. at 16.]  In the prayer for relief at the end of their Complaint, Plaintiffs seek, among other things, "[s]uch other relief as the Court deems just and reasonable."  [Compl. at 10.]  The Complaint also states that "PIIC is asserting its subrogation rights under the insurance contract issued to HGC."  [Compl. ¶ 24.]  However, that paragraph falls under the section headed "COUNT ONE (Connecticut common law indemnification/active negligence)."  In its reply brief in support of its motion to dismiss, the Government argues that the equitable subrogation claim is premature and should be dismissed for lack of ripeness.

Although the Government does not challenge Plaintiffs' attempt to expand their Complaint through briefing on the motion to dismiss, the Court notes that ordinarily, a party may not amend a pleading through a memorandum of law.  *See, e.g.*, *MacGillivray v. Whidden*, No. 3:04-cv-1523, 2006 U.S. Dist. LEXIS 9430, at *8 (D. Conn. Mar. 10, 2006) ("[Plaintiff] cannot amend his complaint in his memorandum.") (citations omitted).  Further, prescribing the pleading standard for equitable claims, Connecticut Practice Book § 10-27 provides that "[a] party seeking equitable relief shall specifically demand it as such, unless the nature of the demand itself indicates that the relief sought is equitable relief."

Despite the fact that Plaintiffs' prayer for relief does not include the word "equity" or any derivative of that word, they are not barred from asserting their claim under existing Connecticut state court precedent. Connecticut courts have held that a "general prayer for relief from the court" is sufficient to plead an equitable claim. *Total Aircraft, LLC v. Nascimento*, 889 A.2d 950, 952 (Conn. App. Ct. 2006) (finding that plaintiff had adequately plead a quantum meruit claim); *see also Warning Lights & Scaffold Serv. V. O & G. Indus., Inc.*, 925 A.2d 359, 364 (Conn. App. Ct. 2007) (noting that the court in *Total Aircraft* "concluded that a failure to plead, separately and specifically, a claim of quantum meruit did not preclude recovery under that theory"). The Connecticut Supreme Court has ruled that "[a]ny relief can be granted under the general prayer which is consistent with the case stated in the complaint and is supported by the proof 'provided the defendant will not be surprised or prejudiced thereby.'" *Cottrell v. Cottrell*, 138 A. 458, 461 (Conn. 1927). "Where the nature of the case and the nature of the plaintiff's demand is such that equitable relief is clearly being sought, a specific demand for equitable relief is not necessary." *Total Aircraft*, 889 A.2d at 953 (quoting *Dorsey v. Mancuso*, 583 A.2d 646, 649 (1990)). In *Total Aircraft*, as in this case, plaintiff did not use the word "equity" in its prayer for relief, asking only for "such other and further relief as may be deemed appropriate by the court." *Total Aircraft*, 889 A.2d at 952. The court found that "the allegations of the complaint set forth the nature of the demand as one in quantum meruit."

*Total Aircraft*, 889 A.2d at 953.  In this case, as noted above, Plaintiffs state that "PIIC is asserting its subrogation rights" in the description of their indemnification claim.  The nature of the case as described in the Complaint is clearly one in which an insurance company seeks to pursue equitable subrogation.  The first line of the Complaint is "Plaintiff [PIIC] as subrogee of [HGC] . . ." [Compl. at 1.]  The facts and allegations in Plaintiffs' Complaint and the prayer for relief easily support a claim for equitable subrogation.

Further, the Government is not prejudiced by the recognition of an equitable subrogation claim, as "the defendant has not claimed, and the record does not reflect, that it was surprised or prejudiced by the plaintiff's failure to allege expressly an entitlement to recovery through equitable subrogation."  925 A.2d at 364.  The Government argues only that the claim for equitable subrogation is not ripe for adjudication.  [Gov't Reply at 7-9.]

The Court does not find persuasive any of the authorities cited by the Government in support of their argument that the equitable subrogation claim should be dismissed as premature.  The Government cites to cases discussing the "make whole" rule, which provides that "where an insured is entitled to receive recovery for the same loss from more than one source . . . the insurer may enforce its subrogation rights only after the insured has been fully compensated for all of its loss."  *United States v. Lara*, No. 3:08-cr-169, 2009 U.S. Dist. LEXIS 103772, at *4-5 (D. Conn. Nov. 6, 2009) (citation omitted).  The Government argues that PIIC cannot bring an

13

equitable subrogation claim until HGC has been "made whole." [Gov't Reply at 8-9.] This argument is not persuasive, first because it is not clear from the Complaint whether HGC has yet been "made whole", and regardless, such factual inquiry is inappropriate on a motion to dismiss. *Cf. Hartford Cas. Ins. Co. v. Cont'l Cas. Co.*, No. HHDCV136037635S, 2014 Conn. Super. LEXIS 772, at *13-14 (Conn. Super. Ct. Apr. 7, 2014) (rejecting third-party defendant's argument that equitable subrogation claim was barred by the "make whole" doctrine because the complaint did not contain express allegations as to whether the insured had been made whole and the court should not engage in making findings of fact in deciding motion to strike). Further, it appears that under Connecticut state law, just as a party may bring an indemnification claim as a third-party action pursuant to Conn. Gen. Stat. § 52-102a, a plaintiff may maintain an equitable subrogation claim as a third-party action pursuant to Conn. Gen. Stat. § 52-102a, even without having first made payment to the insured. *Cf. Cecere v. Am. Eagle Ins. Co.*, No. CV98058129S, 2000 Conn. Super. LEXIS 3417, at *2-5 (Conn. Super. Ct. Dec. 12, 2000) (concluding that a party may bring an equitable subrogation claim in a third-party impleader complaint filed pursuant to Conn. Gen. Stat. § 52-102a, even before any payment has been made by the insurer).

Nor is the citation to *Hamilton v. United Services Automobile Association*, 974 A.2d 774, 782 (Conn. App. Ct. 2009) persuasive. Although it may be that claims contingent upon some event that has not transpired

are generally not ripe, as discussed above, there are exceptions to that rule that are allowed for the sake of efficiency and judicial economy.  Just as allowing the indemnification claims to proceed serves the aims of conserving court resources and efficiency, the Court finds that allowing the equitable subrogation claim to proceed at this time further serves those aims.

## IV. CONCLUSION

For the above-described reason, the Court orders that this case be consolidated with and onto the docket of *Kennedy v. United States*, 3:14-cv-00719, and the Court will treat the claims in this case as if they were third-party claims raised in that case.  Defendant's motion to dismiss is denied.

SO ORDERED

                                                          /s/
                                   Hon. Vanessa L. Bryant
                                   United States District Judge

Dated at Hartford, Connecticut: September 30, 2014